## GLAZER CONSTRUCTION CO., INC., Plaintiff,

v.

## UNITED STATES, Defendant.

No. 98–400C.

United States Court of Federal Claims.

May 7, 2002.

**514**

John P. Davey, Davey & Davey, P.C., Canton, Massachusetts, attorney of record for the plaintiff. With whom was Mary Davey Morley, of counsel.

Michael F. Kiely, Trial Attorney, Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, attorneys of record for the defendant.

## OPINION

HORN, Judge.

The contract at issue in this case was awarded for the renovation and alteration of a portion of a Veterans Hospital in Bedford, Massachusetts, and was entered into by the plaintiff, Glazer Construction Co., Inc. (Glaz-er Construction), and the United States Department of Veterans Affairs (VA). The VA terminated Glazer Construction for default for failure to complete the contract on time. The plaintiff's amended complaint alleges that the VA improperly terminated it for default, that the defendant's actions constituted a breach of contract, were arbitrary and capricious, and constituted negligent behavior. The plaintiff requests an equitable adjustment for differing site conditions and a revocation of the termination for default. The defendant filed a motion for partial summary judgment, to which the plaintiff has responded. Defendant claims that the termination for default was valid when issued, and that, in addition, the termination is also justified based on the post-hoc discovery of Davis–Bacon Act and Buy American Act violations, committed by Glazer Construction while performing the contract at issue in this case. Pursuant to the discussion which follows, the court finds that, without the need for further trial proceedings, Glazer Construction's violations of the Davis–Bacon Act are valid grounds to uphold the defendant's termination for default. Defendant's motion for partial summary judgment, therefore, is granted.

### FINDINGS OF FACT

**The Bedford, VA Contract and the Termination for Default**

On August 2, 1996, Glazer Construction and the VA entered into contract number V518C–918 for the renovation and alteration of Wings A and C of Building 4 of the VA's Edith Nourse Rogers Memorial Veterans Hospital in Bedford, Massachusetts (the Bedford, VA contract). The original price of the contract was $2,186,000.00. The contract included the clause Default (Fixed–Price Construction), Federal Acquisition Regulations (FAR) § 52.249–10 (1995), which states, in pertinent part:

(a) If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in this contract including any extension, or fails to complete the work within this time, the

Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed....

(b) The Contractor's right to proceed shall not be terminated nor the Contractor charged with damages under this clause, if—

(1) The delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include (i) acts of God or of the public enemy, (ii) acts of the Government in either its sovereign or contractual capacity, (iii) acts of another Contractor in the performance of a contract with the Government, (iv) fires, (v) floods, (vi) epidemics, (vii) quarantine restrictions, (viii) strikes, (ix) freight embargoes, (x) unusually severe weather, or (xi) delays of subcontractors or suppliers at any tier arising from unforeseeable causes beyond the control and without the fault or negligence of both the Contractor and the subcontractors or suppliers; and

(2) The Contractor, within 10 days from the beginning of any delay (unless extended by the Contracting Officer), notifies the Contracting Officer in writing of the causes of delay. The Contracting Officer shall ascertain the facts and the extent of delay. If, in the judgment of the Contracting Officer, the findings of fact warrant such action, the time for completing the work shall be extended. The findings of the Contracting Officer shall be final and conclusive on the parties, but subject to appeal under the disputes clause.

The contract also included the clause Contract Termination—Debarment, FAR § 52.222–12, which states:

A breach of the contract clauses entitled Davis–Bacon Act, Contract Work Hours and Safety Standards Act—Overtime Compensation, Apprentices and Trainees, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Subcontracts (Labor Standards), Compliance With Davis–Bacon and Related Act Regulations, or Certification of Eligibility may be grounds for termination of the contract, and for debarment as a Contractor and subcontractor as provided in 29 CFR 5.12.

According to the regulations in effect at the time of the termination for default, the contracting officer could terminate Glazer Construction for default based on "sufficiently serious" Buy American Act violations pursuant to FAR § 25.206(c)(4) (1997).

The VA issued a notice to proceed to Glazer Construction on September 26, 1996, directing Glazer Construction to begin work on November 1, 1996 and to complete the project by November 1, 1997. During performance of the contract, the VA requested that Glazer Construction perform additional or changed work, acknowledged by several supplemental agreements and contract modifications, also called change orders. Several of the modifications allotted additional time for Glazer Construction to complete the project. By June 26, 1997, the VA had issued seven modifications, extending the project completion date by thirty-seven days to December 8, 1997.

By letter dated September 5, 1997, Glazer Construction submitted a revised construction schedule to the VA, proposing a project completion date of March 2, 1998. John C. Guregian, the VA's contracting officer for the project, rejected Glazer Construction's proposed, revised project completion date by letter dated September 17, 1997, and reminded the contractor that the "current completion date inclusive of all changes to date is December 8, 1997." The letter noted various contract clauses relative to the scheduling of the project, including the General Conditions Clause 01001 Subsection 1.83, also referred to as FAR § 52.236–15(b–c), which states:

(b) ... If, in the opinion of the Contracting Officer, the Contractor falls behind the approved schedule, the Contractor shall take steps necessary to improve its progress, including those that may be required by the Contracting Officer, without additional cost to the Government. In this circumstance, the Contracting Officer may require the Contractor to increase the number of shifts, overtime operations, days of work, and/or the amount of construction plant, and to submit for approval any supplementary schedule or schedules in chart

form as the Contracting Officer deems necessary to demonstrate how the approved rate of progress will be regained.

(c) Failure of the Contractor to comply with the requirements of the Contracting Officer under this clause shall be grounds for a determination by the Contracting Officer that the Contractor is not prosecuting the work with sufficient diligence to ensure completion within the time specified in the contract. Upon making this determination, the Contracting Officer may terminate the Contractor's right to proceed with the work, or any separable part of it, in accordance with the default terms of this contract.

The text of the letter also specifically pointed out that failure to comply with the requests of the contracting officer under the above clause shall be grounds for termination.

On September 23, 1997, the project completion date was extended two days for a new completion date of December 10, 1997, by Change Order Number 13. On October 2, 1997, the project completion date was extended, for the last time, two additional days, to December 12, 1997, by Change Order Number 14.

On October 24, 1997, the VA issued a cure notice to Glazer Construction stating that its most recent progress schedule was unacceptable. The letter also stated the VA's belief that at a weekly job meeting on October 2, 1997, Murray Glazer, president of Glazer Construction, had stated that Glazer Construction would not be able to meet the contract completion date of December 12, 1997, which the government considered an anticipatory breach. Finally, the letter stated that "unless this condition is cured within (15) days after receipt of this notice, the government may terminate for default under the terms and conditions of FAR § 52.249.10 Default (Fixed–Price Construction) (Apr. 1984) clause of this contract."

On October 30, 1997, Glazer Construction's counsel submitted a letter to the VA which reiterated Glazer Construction's representations as to the need for additional time extensions and that the December 12, 1997 project completion date might not be attainable "due to past problems on this contract."

Glazer Construction did not complete the contract by the extended project completion date, December 12, 1997. According to a letter to Glazer Construction, from the contracting officer, Mr. Guregian, dated December 12, 1997, which noted that the completion time would expire that day at midnight, the contractor had failed to complete sixteen percent of the contract. In addition, Mr. Guregian rejected Glazer Construction's claims of delay on the part of the VA as "unrealistic and unsubstantiated." Therefore, the letter indicated that the government considered Glazer Construction to be in default as of December 13, 1997. The letter indicated, however, that it would be in the best interests of the government to allow Glazer Construction to continue performing under the contract, in default status, and that the defendant expected Glazer Construction to complete the project by January 21, 1998, so that the VA could take beneficial occupancy of the building by February 1, 1998.

Glazer Construction did not complete the contract by January 21, 1998. By letter dated January 21, 1998, the VA, therefore, terminated for default Glazer Construction's right to proceed under the contract. In support of the decision to terminate Glazer Construction for default, the letter stated:

> Since you were advised of your technical default status on December 12, 1997, you have failed to demonstrate any additional effort to complete performance of this project by January 21, 1998. Your actions to date demonstrate a disregard for concern over completing the remaining 12% of the contract. Further your actions have seriously jeopardized this facilities [sic] ability to take beneficial occupancy of Building # 4 Wards 4A & 4C by February 1, 1998. Accordingly it has been determined that your actions have endangered completion of this project.

In the same letter, plaintiff was informed of its right to appeal the January 21, 1998 termination decision and how to do so.

### Davis–Bacon Act Violations

The Bedford, VA contract between Glazer Construction and the VA also contained the

following clauses: Davis–Bacon Act, FAR § 52.222–6 (1995), Payrolls and Basic Records, FAR § 52.222–8 and Contract Termination—Debarment, FAR § 52.222–120. Davis–Bacon Act, FAR § 52.222–6 states:

(a) All laborers and mechanics employed or working upon the site of the work will be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determinations of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics.... Such laborers and mechanics shall be paid not less than the appropriate wage rate and fringe benefits in the wage determination for the classification of work actually performed, without regard to skill, except as provided in the clause entitled *Apprentices and Trainees.* Laborers and mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein; *provided,* that the employer's payroll records accurately set forth the time spent in each classification in which work is performed....

\* \* \* \* \* \*

(b)(3) In the event the Contractor, the laborers or mechanics to be employed in the classification, or their representatives, and the Contracting Officer do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), the Contracting Officer shall refer the questions, including the views of all interested parties and the recommendation of the Contracting Officer, to the Administrator of the Wage and Hour Division for Determination. The Administrator, or an authorized representative, will issue a determi-

nation within 30 days of receipt and so advise the Contracting Officer or will notify the Contracting Officer within the 30–day period that additional time is necessary.

(4) The wage rate (including fringe benefits, where appropriate) determined pursuant to subparagraphs (b)(2) and (b)(3) of this clause shall be paid to all workers performing work in the classification under this contract from the first day on which work is performed in the classification.

Payrolls and Basic Records, FAR § 52.222–8 states:

(a) Payrolls and basic records relating thereto shall be maintained by the Contractor during the course of the work and preserved for a period of 3 years thereafter for all laborers and mechanics working at the site of the work. Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in section 1(b)(2)(B) of the Davis–Bacon Act), daily and weekly number of hours worked, deductions made, and actual wages paid.

\* \* \* \* \* \*

(b)(1) The Contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to the Contracting Officer. The payrolls submitted shall set out accurately and completely all of the information required to be maintained under paragraph (a) of this clause.

\* \* \* \* \* \*

(2) Each payroll submitted shall be accompanied by a *Statement of Compliance,* signed by the Contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the contract and shall certify—

(i) That the payroll for the payroll period contains the information required to be maintained under paragraph (a) of this clause and that such information is correct and complete;

(ii) That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in the Regulations, 29 CFR part 3; and

(iii) That each laborer or mechanic has been paid not less than the applicable wage rate and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the contract.

(3) The weekly submission of a properly executed certification set forth on the reverse side of Optional Form WH–347 shall satisfy the requirement for submission of the *Statement of Compliance* required by subparagraph (b)(2) of this clause.

(4) The falsification of any of the certifications in this clause may subject the Contractor or subcontractor to civil or criminal prosecution under section 1001 of title 18 and section 3729 of title 31 of the United States Code.

During contract performance, Murray Glazer regularly submitted certified payrolls on behalf of Glazer Construction to the VA, each containing a multi-part certification regarding the wages that Glazer Construction had paid during the reported period. Section 1 of the payroll certifications submitted by Glazer Construction certified that:

[A]ll persons employed on said projects have been paid the full weekly wages earned, that no rebates have been or will be made either directly or indirectly to or on behalf of said Glazer Constr. Co. Inc. from the full weekly wages earned by any person and that no deductions have been made either directly or indirectly from the full wages earned by any person, other than permissible deductions as defined in Regulations . . . issued by the Secretary of Labor . . . and described below.

Section 2 of the payroll certifications submitted by Glazer Construction certified:

That any payrolls otherwise under this contract required to be submitted for the above period are correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract; that the classifications set forth therein for each laborer or mechanic conform with the work performed.

Glazer Construction's certified payrolls were hand-written by Murray Glazer, who also signed the payroll certifications on behalf on Glazer Construction.

By letter dated January 28, 1997, the contracting officer, Mr. Guregian notified Glazer Construction that payrolls it had submitted to the government evidenced a failure to comply with the Davis–Bacon Act wage rates. Specifically, the government alleged that for the period of November 9, 1996 through January 18, 1997, Glazer Construction had misclassified a group of workers[1] as "Laborers Group 1: Carpenter Tenders" instead of "Wrecking Laborers" and directed Glazer Construction to address the situation. The applicable Davis–Bacon Act wage determination for the contract provided that for the period of November 9, 1996 through January 18, 1997, "Laborers Group 1: Carpenter Tenders" were to be paid at the rate of $25.50 an hour in the Bedford, Middlesex County, Massachusetts area, whereas "Wrecking Laborers" were to be paid at the rate of $26.60 an hour.

On January 31, 1997, Glazer Construction sent a letter to the VA, together with a certified payroll for the time period in question, signed by Murray Glazer, indicating wage adjustments for the period of November 9, 1996 through January 18, 1997. The certified payroll stated that Glazer Construction had made an adjustment of $1.10 an hour to the wages of the seven workers addressed in the VA's January 28, 1997 letter, yielding a gross payment to those employees of $1,298.55.

1. The record reflects that there were seven workers identified as being part of this group.

From time to time during contract performance, Glazer Construction created a document called a "Job Profitability Report," apparently for its own use. The Job Profitability Reports recorded actual expenses incurred by Glazer Construction in the performance of the contract, including salaries paid to Glazer Construction's employees. More specifically, the Job Profitability Reports recorded the "gross amount" of salary earned by Glazer Construction's employees in the performance of the contract for a pay period. There is no evidence in the record indicating that Murray Glazer or Glazer Construction were required to, or did submit, the Job Profitability Reports to the government during performance of the contract. Glazer Construction's Job Profitability report for the period from September 1, 1996 to June 30, 1997 does not reflect the adjustment in wages referenced in Glazer Construction's January 31, 1997 letter and certified in an accompanying payroll. Glazer Construction has never explained the discrepancy.

Glazer Construction's Job Profitability Reports also differed from the certified payrolls submitted to the government with respect to one of Glazer Construction's employees, Chris Graul.[2] The wage Glazer Construction paid to Mr. Graul, as reported in certified payrolls for nine pay periods, differs from the entries for Mr. Graul in Glazer Construction's Job Profitability report for those periods. The following table summarizes the information provided by Glazer Construction in certified payrolls as compared to the information on Glazer Construction's Job Profitability Report:

| Pay Period | Hourly Wage | Hours Worked | Salary Reported on Certified Payrolls | Salary Reported on Job Profitability Reports |
|---|---|---|---|---|
| 12/27/96 | $25.50 | 29 | $ 739.50 | $ 348.00 |
| 1/3/97 | $25.50 | 32 | $ 816.00 | $ 384.00 |
| 1/10/97 | $25.50 | 40 | $1,020.00 | $ 480.00 |
| 1/17/97 | $25.50 | 40 | $1,020.00 | $ 480.00 |
| 1/24/97 | $26.60 | 32 | $ 851.20 | $ 384.00 |
| 1/31/97 | $26.60 | 40 | $1,064.00 | $ 480.00 |
| 2/7/97 | $26.60 | 40 | $1,064.00 | $ 480.00 |
| 2/14/97 | $26.60 | 40 | $1,064.00 | $ 480.00 |
| 2/21/97 | $26.60 | 40 | $1,064.00 | $ 480.00 |
| | | Totals | $8,702.70 | $3,996.00 |
| | | Difference | | $4,706.70 |

The contract at issue in this case contained the clause Disputes Concerning Labor Standards, FAR § 52.222–14 (1995), which states: The United States Department of Labor has set forth in 29 CFR parts 5, 6, and 7 procedures for resolving disputes concerning labor standards requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of this contract. Disputes

---

**2.** Mr. Graul also was one of the seven misclassified employees. The alleged Davis–Bacon Act violations described above, which pertain exclusively to Mr. Graul, appear to be in addition to the violation concerning the seven misclassified employees.

within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

By letter dated January 4, 2002, the United States Department of Labor (DOL) notified Murray Glazer and Glazer Construction that it had received information from the VA regarding the discrepancies in Glazer Construction's certified payrolls, as compared to its Job Profitability Reports. The letter charged that Glazer Construction had committed Davis–Bacon Act violations by failing to adjust the wages of the seven misclassified employees identified in the VA's January 28, 1997 letter. The letter also claimed that Glazer Construction committed Davis–Bacon Act violations by underpaying Mr. Graul. In support of the allegations, the DOL cited the discrepancies between Glazer Construction's certified payrolls and its Job Profitability Reports. According to the letter, the DOL found "reasonable cause to believe that the violations of the Davis–Bacon Act, as described herein, constitute a disregard of obligations to employees within the meaning of section 3(a) of the Act." The letter from DOL noted that Glazer Construction had the opportunity to request a hearing before one of the Department's Administrative Law Judges for a decision as to whether the DOL should undertake debarment action against Glazer Construction due to the violations. The letter stated that if Glazer Construction wished to request a hearing, it must postmark such request within thirty days of the date of the letter. Finally, the letter stated: "If I do not hear from you within the specified time period, I will submit this matter to the Comptroller General of the United States for his consideration in applying the ineligibility sanctions provided in section 3(a) of the Davis–Bacon Act." The letter, addressed to "Murray Glazer, President, Glazer Construction Company, Inc." also stated that:

Inclusion on the ineligible bidders list would result in Glazer Construction Company, Inc.; and Murray Glazer, as President and any other firm, corporation, partnership, or association in which you have an interest being barred from doing business with the Government as a contractor or subcontractor for a period of three (3) years from the date of publication of the list containing those names.

According to a certified mail receipt, Glazer Construction received the DOL's letter on January 5, 2002.

Glazer Construction did not respond within the specified time period to the DOL's January 4, 2002 letter. Subsequently, the DOL recommended to the Comptroller General that Glazer Construction and Murray Glazer "be placed on the ineligible bidders list for having committed violations of the Davis–Bacon Act which constituted a disregard of obligations to employees under section 3(a) of the Act."

**Buy American Act Violations**

The contract between Glazer Construction and the VA also contained the following clauses: Buy American Act, Veterans Administration Acquisition Regulations, FAR § 852.236–89 (1995) and Buy American Act—Construction Materials, FAR § 52.225–5. Buy American Act, Veterans Administration Acquisition Regulations, FAR § 852.236–89, states:

(a) Reference is made to the clause entitled "Buy American Construction Materials," FAR 52.225–5.

(b) Notwithstanding a bidder's right to offer identifiable foreign material in its bid pursuant to the above provisions, VA does not anticipate accepting an offer that includes foreign items.

(c) If a bidder chooses to submit a bid which includes foreign materials, that bidder must provide a listing of the specific foreign materials. he/she intends to use and a price for said materials. Because VA has a strong preference for domestic items, bidders are strongly urged to include bid prices for comparable domestic construction material. If VA determines not to accept foreign items and no comparable domestic items are provided the entire bid will be rejected.

(d) Any foreign item proposed after award will be rejected unless the bidder proves to VA's satisfaction: (1) it was impossible to request the exemption prior to award, and (2) said domestic construction

material is no longer available, or (3) where the price has escalated so dramatically after the contract has been awarded that it would be unconscionable to require performance at that price. The determinations require [sic] by (1), (2) or (3) of this paragraph shall be at the sole discretion of the Secretary of Veterans Affairs.

(e) By signing this bid, the bidder declares that all articles, materials and supplies for use on the project shall be domestic unless specifically set forth on the Bid Form or addendum thereto.

Buy American Act—Construction Materials, FAR § 52.225–5 states:

(a) The Buy American Act (41 U.S.C. § 10) provides that the Government give preference to domestic construction material.

*Components,* as used in this clause, means those articles, materials, and supplies incorporated directly into construction materials.

*Construction material,* as used in this clause, means an article, material, or supply brought to the construction site for incorporation into the building or work. Construction material also includes an item brought to the site pre-assembled from articles, materials or supplies. However, emergency life safety systems, such as emergency lighting, fire alarm, and audio evacuation systems, which are discrete systems incorporated into a public building or work and which are produced as a complete system, shall be evaluated as a single and distinct construction material regardless of when or how the individual parts or components of such systems are delivered to the construction site.

*Domestic construction material,* as used in this clause, means (1) an unmanufactured construction material mined or produced in the United States, or (2) a construction material manufactured in the United States, if the cost of its components mined, produced, or manufactured in the United States exceeds 50 percent of the cost of all its components. Components of

foreign origin of the same class or kind as the construction materials determined to be unavailable pursuant to subparagraph 25.202(a)(3) of the Federal Acquisition Regulation (FAR) shall be treated as domestic.

(b) The Contractor agrees that only domestic construction material will be used by the Contractor, subcontractors, materialmen, and suppliers in the performance of this contract, except for foreign construction materials, if any, listed in this contract.

On April 15, 1997, the United States Air Force and Glazer Construction entered into an unrelated contract, contract number F19650–97–C0004, for the construction of an elevator at Hanscom Air Force Base, near Bedford Massachusetts (the Hanscom, Air Force contract). On February 24, 1998, the Air Force proposed both Glazer Construction and its president, Murray Glazer, for debarment from government contracting and from indirectly or directly receiving the benefits of federal assistance programs. The Air Force based its debarment proposal on alleged use of construction materials, during performance of the Hanscom Air Force contract, that were not in compliance with the Buy American Act and an assertion that Murray Glazer had made false statements to the Air Force when it was investigating the alleged Buy American Act violations.

Glazer Construction and Murray Glazer contested the Air Force's proposed debarment by letters dated March 9, March 17, April 8 and May 14, 1998, and in a meeting with the Air Force debarring official on April 7, 1998. On May 21, 1998, the Air Force debarred both Glazer Construction and Murray Glazer for three years, retroactive to February 24, 1998, to February, 2001.[3]

On February 4, 1999, the Air Force proposed extending the debarment of Glazer Construction and Murray Glazer for an additional six years, based on new allegations that Glazer Construction and Murray Glazer had committed violations of the Davis Bacon

---

**3.** The Air Force debarment went into effect roughly one month after Glazer Construction

was terminated from the Bedford, VA contract.

Act and the Buy American Act during performance of the Bedford, VA contract.[4] Neither Glazer Construction nor Murray Glazer contested the Air Force's proposal to extend the periods of their debarment, and on March 10, 1999, the Air Force extended their debarment an additional six years to February, 2007.

In a separate action, by letter dated March 9, 1999, the Air Force proposed further extending the debarment of Glazer Construction and Murray Glazer for an additional period based on yet more information regarding alleged misconduct by Glazer Construction and Murray Glazer. The letter refers to both the May 21, 1998 debarment and the then proposed debarment, which became effective March 10, 1999. The letter indicated that Glazer Construction could submit information and argument in opposition to the proposed debarment extension within thirty days of its receipt of the letter. The additional proposed debarment extension was supported by a memorandum, also dated March 9, 1999. The accompanying memorandum stated:

> 7. GCC [Glazer Construction Company] committed numerous violations of the Buy American Act in its performance of the VA Bedford Contract. As of May 14, 1998, the following foreign made items, among others, had been installed by GCC, or had been purchased by GCC for installation at the VA Medical Center: electrical wiring (Canada), steel conduit (Canada), locks (Great Britain), wardrobe hooks (Taiwan), light bulbs (Thailand, Mexico, Holland, Poland), soap dish/with backing (Taiwan),

sink strainer (Taiwan), toilet gasket (Taiwan), exit light fixtures (Canada).

> 8. GCC installed .22 gauge studs in load bearing locations, rather than the larger .20 gauge studs required by the contract.[5]

In a section titled "FINDINGS," the March 9, 1998 memorandum stated:

> 1. The conduct of GCC and Murray Glazer, as set out in each of paragraph 7 and 8 above, is of so serious or compelling a nature that it affects their responsibility to be government contractors. As such, the misconduct as stated in each such paragraph provides a separate and independent basis for the extension of their debarments, pursuant to FAR 9.406-2(c).

> 2. GCC's failure to comply with the terms of the VA Bedford Contract, as set out in the administrative record, evidences a wilful failure to perform, and a history of failures to perform government contracts. Such conduct provides separate and independent bases for the extension of GCC's debarment, pursuant to FAR 9.406-2(b)(1)(i).

> 3. GCC's failure to comply with the terms of the VA Bedford Contract, and with the terms of the Air Force contract, as set out in the administrative record, evidences a history of failures to perform government contracts. Such conduct provides a separate and independent basis for the extension of GCC's debarment, pursuant to FAR 9.406-2(b)(1)(i).

> 4. The fraudulent, criminal and other seriously improper conduct of GCC is imputed to Mr. Glazer, pursuant to FAR 9.406-5(b), as he was an officer and shareholder of

---

**4.** The record reflects an incident in which Buy American Act violations were cited by the VA during performance of the Bedford, VA contract at issue in this case. On or about October 31, 1997, the VA demanded certification from Glazer Construction that materials on the project site were manufactured in the United States. Glazer Construction responded on November 26, 1997, that "items not in compliance" with the Buy American Act had been removed from the site. There is nothing in the record indicating what the VA did after Glazer Construction's assertion that it had removed noncompliant items from the Bedford, VA site. The plaintiff has argued, in its "Statement of the Case," that the items in violation of the Buy American Act discovered by the Air Force were different than the items cited by

the VA in October of 1997. There is no corroborating evidence in the record. Moreover, whether the items were, in fact, similar, is irrelevant to whether construction materials in violation of the Buy American Act were used by Glazer Construction in its performance of the Bedford, VA contract or the fact that neither Murray Glazer nor Glazer Construction contested the extension of the debarment by the Air Force.

**5.** In the letter extending the debarment, the Air Force noted that by using studs in load bearing locations that were smaller than required by the contract, Glazer Construction endangered the safety of VA personnel.

GCC who participated in, knew of or had reason to know of GCC's conduct. Such imputed conduct provides a separate and independent basis for the extension of Mr. Glazer's debarment.

5. The fraudulent, criminal, and other seriously improper conduct of Murray Glazer is imputed to GCC, pursuant to FAR 9.406–5(a), as his conduct occurred in connection with the performance of his duties for or on behalf of GCC. Such imputed conduct provides a separate and independent basis for the extension of GCC's debarment.

The discovery of the items which were of alleged foreign origin noted in the March 9, 1998 memorandum occurred after Glazer Construction was excluded by the VA from the Bedford facility following the VA's termination of Glazer Construction for default. Neither the Air Force nor the VA issued cure notices to Glazer Construction in March of 1999.

Neither Glazer Construction nor Murray Glazer contested the Air Force's second proposal to extend the period of debarment. By letter dated May 19, 1999, the Air Force notified Glazer Construction that based on the administrative record and Glazer Construction's failure to respond to the March 9, 1999 additional debarment proposal, the Air Force would extend Glazer Construction's debarment period, yet again, for an additional six years, to and including February 22, 2013. The letter stated: "This extended period is necessary because of the evidence in the record of Glazer's repeated misconduct, including numerous Buy American Act violations committed during the period Glazer was making representations to the debarring official about remedial measures Glazer had implemented to avoid such violations."

In summary, the Air Force first debarred Glazer Construction on May 21, 1998, for three years, retroactive to February 24, 1998, based on violations of the Buy American Act committed during Glazer Construction's performance of the Hanscom, Air Force contract, and false statements made by Murray Glazer to the Air Force during the government's investigation. Then, on March 10, 1999, the Air Force extended the debarment of Glazer Construction and Murray Glazer for an additional six years based on violations of the Davis–Bacon Act and the Buy American Act committed by Glazer Construction during performance of the Bedford, VA contract. Finally, on May 19, 1999, the Air Force extended the debarment of Glazer Construction and Murray Glazer for a second time, again for an additional six years, to February 22, 2013, based on additional information of Buy American Act violations committed by Glazer Construction during its performance on the Bedford, VA contract.

Glazer Construction filed its complaint in this court on April 23, 1998 and an amended complaint on December 9, 1998. Although difficult to follow, the amended complaint appears to describe two counts.[6] Count I asserts a request for an equitable adjustment to the contract price in the amount of $43,370.00 for an alleged differing site condition consisting of an undisclosed floor topping beneath the tile that Glazer Construction had removed throughout the building. Count II alleges that the contracting officer's decision to terminate Glazer Construction's contract for default was an abuse of discretion. The defendant filed a motion for partial summary judgment to dismiss Count II of plaintiff's amended complaint on February 5, 2002. The defendant filed a supplemental

---

6. Glazer Construction's amended complaint consists of an introductory thirteen pages alleging numerous government caused problems encountered by the plaintiff in its performance of the contract. Following those thirteen pages, however, the complaint only includes two counts. In the statement of facts to its initial motion for partial summary judgment, the defendant described those two counts: "Count I seeks an equitable adjustment to the contract price in the amount of $43,370 for an alleged differing site condition consisting of an undisclosed floor topping beneath the tile that Glazer had removed

throughout the building. Comp. ¶¶ 44–53. Count II alleges that the contracting officer's decision to terminate for default Glazer's contract was an abuse of discretion. *Id.* ¶¶ 54–74." In a section entitled "Statement of the Case" in its response to defendant's motion for partial summary judgment, plaintiff appears to have accepted defendant's summation of the complaint, stating: "The Plaintiff is satisfied with the presentation by the Defendant, with the following additions and distinctions." Plaintiff did not attempt to correct defendant's description of the complaint.

motion for partial summary judgment on April 5, 2002. Plaintiff has filed responses to both the defendant's partial motion for summary judgment and its supplemental motion for partial summary judgment.

## DISCUSSION

### Summary Judgment

The defendant has submitted a partial motion for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001); *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed.Cir.2001); *Avenal v. United States*, 100 F.3d 933, 936 (Fed.Cir. 1996), *reh'g denied* (1997); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir.1994). A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48, 106 S.Ct. 2505; *see also Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d at 1257; *Curtis v. United States*, 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Ford Motor Co. v. United States*, 157 F.3d 849, 854 (Fed.Cir. 1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact); *Johnson v. United States*, 49 Fed.Cl. 648, 651 (2001); *Becho, Inc. v. United States*, 47 Fed.Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. 2505; *Jay v. Sec'y of Dep't of Health and Human Servs.*, 998 F.2d 979, 982 (Fed.Cir.), *reh'g denied, en banc declined* (1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553 n. 3 (Fed.Cir.1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Summary judgment:

> saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

*Dehne v. United States*, 23 Cl.Ct. 606, 614–15 (1991) (citing *Pure Gold, Inc. v. Syntex, Inc.*, 739 F.2d 624, 626 (Fed.Cir.1984)), *vacated on other grounds*, 970 F.2d 890 (Fed.Cir.1992); *United States Steel Corp. v. Vasco Metals Corp.*, 55 C.C.P.A. 1141, 394 F.2d 1009, 1011 (1968).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *Eli Lilly and Co. v.*

*Barr Labs., Inc.,* 251 F.3d 955, 971 (Fed. Cir.), *reh'g and reh'g en banc denied* (2001); *Gen. Elec. Co. v. Nintendo Co.,* 179 F.3d 1350, 1353 (Fed.Cir.1999). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues, must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. at 587–88, 106 S.Ct. 1348; *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d at 1257; *Wanlass v. Fedders Corp.,* 145 F.3d 1461, 1463 (Fed.Cir.), *reh'g denied* (1998).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,* 109 F.3d 739, 741 (Fed.Cir.) (quoting *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994), *reh'g denied* (1995)), *reh'g denied, en banc suggestion declined* (1997); *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1569 (Fed.Cir.1997). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Am. Airlines v. United States,* 204 F.3d 1103, 1108 (Fed. Cir.2000); *see also Schoell v. Regal Marine Indus., Inc.,* 247 F.3d 1202, 1207 (Fed.Cir. 2001).

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party must go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.* After reviewing the parties' submissions, the court finds that there are no material facts in dispute.

## Post–Hoc Justification of the Termination for Default

In defendant's motion for partial summary judgment, the government asserts that, even without going to trial on the default termination for failure to complete the contract by the completion date, the defendant may support the termination for default upon different grounds than cited in the termination, if justified by circumstances at the time of the termination. The defendant argues that its decision to terminate Glazer Construction for default on the Bedford, VA contract is justified by the plaintiff's violation of the Buy American Act, which existed at the time of the termination, but which was not discovered until after the termination for default was issued. Furthermore, defendant argues that Glazer Construction is estopped from denying that it used foreign construction materials on the Bedford, VA contract because it did not contest the Air Force's proposals to extend its debarment, which were based on determinations that Glazer Construction committed Buy American Act violations during its performance of the Bedford, VA contract.

In its supplemental motion for partial summary judgment, defendant argues that its decision to terminate Glazer Construction for default on the Bedford, VA contract is justified by the plaintiff's violations of the Davis–Bacon Act committed during contract performance, although also discovered after the termination for default was issued. Moreover, the government argues that Glazer Construction cannot contest the DOL's determination that plaintiff committed Davis–Bacon Act violations on the contract in this court because the DOL has exclusive jurisdiction to make such determinations and because Glazer Construction is estopped from contesting the DOL's determination, given the failure of Glazer Construction or Murray

Glazer to contest the DOL's determination at the agency.

In response, the plaintiff argues that the court does not have jurisdiction to determine whether the Davis–Bacon Act or Buy American Act violations warranted a termination of the contract because neither charge formed the basis of a contracting officer's final decision. In addition, the plaintiff argues that the government may not justify a termination for default based on newly discovered evidence when the government had not issued a cure notice relating to the additional charge. The plaintiff argues that whether Glazer Construction would have cured the violations is a question of fact. Plaintiff replies to defendant's supplement to its partial motion for summary judgment with a two sentence response. The first sentence offers "in rebuttal and opposition that which it offered in the original Motion [sic] Summary Judgment as filed by the Defendant." The second sentence, under the heading "Argument," states: "The Plaintiff says that the action by the Department of Labor in January of 2002 is time barred and a nullity. See *McLaughlin [v].[sic] [Richland] Richard [sic] Shoe Co.*, 486 [U.S.] &.S. [sic] 128 [108 S.Ct. 1677, 100 L.Ed.2d 115] (1988)." The court assumes that the plaintiff was referring to *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

█ The court sustains "a default termination if justified by circumstances at the time of termination, regardless of whether the Government originally removed the contractor for another reason." *Kelso v. Kirk Bros. Mech. Contractors, Inc.*, 16 F.3d 1173, 1175 (Fed.Cir.1994) (citing *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1277 (Fed.Cir.1985)); *accord Coll. Point Boat Corp. v. United States*, 267 U.S. 12, 15–16, 45 S.Ct. 199, 69 L.Ed. 490 (1925); *Pots Unlimited, Ltd. v. United States*, 220 Ct.Cl. 405, 410, 600 F.2d 790, 793 (1979) ("However, it is settled law that a party can justify a termination if there existed at the time an adequate cause, even if then unknown.") (citing *Coll. Point Boat Corp. v. United States*, 267 U.S. at 15–16, 45 S.Ct. 199; *Tubular Aircraft Prods., Inc. v. United States*, 213 Ct.Cl. 749,

566 F.2d 1190 (1977); *Nesbitt v. United States*, 170 Ct.Cl. 666, 670, 345 F.2d 583, 585 (1965), *cert. denied*, 383 U.S. 926, 86 S.Ct. 931, 15 L.Ed.2d 846 (1966)).

Violations of the Buy American Act and the Davis–Bacon Act, under the clauses of the contract at issue, can justify the termination of the contract for default by the government. The contract contained clauses which required Glazer Construction to comply with the Davis–Bacon Act. The contract contained the clause Davis–Bacon Act, FAR § 52.222–6(a), by which Glazer Construction agreed to pay its laborers and mechanics "not less than the appropriate wage rate and fringe benefits in the wage determination for the classification of work actually performed, without regard to skill, except as provided in the clause entitled *Apprentices and Trainees.*" Moreover, the contract included the clause Payrolls and Basic Records, FAR § 52.222–8(b)(2)(iii), which provided that the contractor must submit payrolls certifying "that each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the contract." Under the clause Contract Termination—Debarment, FAR § 52.222–12, also included in the contract, a breach of either the Davis–Bacon Act clause or the Payrolls and Basic Records clause were grounds for termination of the contract. The United States Court of Appeals for the Federal Circuit has noted that "[t]he protections of the Davis–Bacon ... Act[ ], as incorporated into strict contract terms, bind a contractor. Violations of these requirements are not mere technicalities." *Kelso v. Kirk Bros. Mech. Contractors, Inc.*, 16 F.3d at 1176.

The contract also contained two clauses by which Glazer Construction agreed to use domestic construction materials on the contract. The Buy American Act clause, required by Veterans Administration Regulations, FAR § 852.36–89, and included in the contract, states: "By signing this bid, the bidder declares that all articles, materials and supplies for use on the project shall be domestic unless specifically set forth on the Bid Form

or addendum thereto."[7] In addition, the clause at section 1.21, Buy American Act— Construction Materials, FAR § 52.225–5 (1995) states: "The Contractor agrees that only domestic construction material will be used by the Contractor, subcontractors, materialmen, and suppliers in the performance of this contract, except for foreign construction materials, if any, listed in this contract."[8]

At the time of the VA's decision to terminate Glazer Construction for default, the FAR defined domestic construction material as:

(a) an unmanufactured construction material mined or produced in the United States or (b) a construction material manufactured in the United States, if the cost of its components mined, produced, or manufactured in the United States exceeds 50 percent of the cost of all its components. (In determining whether a construction material is domestic, only the construction material and its components shall be considered.) The cost of each component includes transportation costs to the place of incorporation into the construction material and any applicable duty (whether or not a duty-free entry certificate is issued). Components of foreign origin of the same class or kind for which determinations have been made in accordance with 25.202(a)(2) are treated as domestic.

FAR § 25.201 (1997). A foreign material is defined as a construction material other than a domestic construction material. *Id.* Pursuant to FAR § 25.206(c)(4), if the contractor's noncompliance with the Buy American Act is "sufficiently serious," the contracting officer should consider a number of possible actions, including terminating the contractor for default. Moreover, Boards of Contract Appeals have upheld a termination for default based on violations of the Buy American Act. *See, e.g., In re H & R Machinists Co.,* A.S.B.C.A. No. 38,440, 91–1 B.C.A. ¶ 23,373, 1990 WL 172730 (1990); *In re Ballantine Labs., Inc.,* A.S.B.C.A. No. 35,138, 88–2 B.C.A. (CCH)

¶ 20,660, 1988 WL 44386 (1988); *In re Sunox, Inc.,* A.S.B.C.A. No. 30,025, 85–2 B.C.A. (CCH) ¶ 18,077, 1985 WL 16553 (1985); *see also In re S & W Assocs.,* D.O.T.C.A.B. No. 2,633, 96–2 B.C.A. ¶ 28,326, 141,447 n. 1, 1996 WL 238507 (1996).

### Jurisdiction

■ Before addressing whether Glazer Construction violated the Buy American Act or the Davis–Bacon Act during performance of the contract, the court first turns to plaintiff's argument that the court does not have jurisdiction to consider the government's post-hoc justification of its decision to terminate Glazer Construction for default until the basis of the new justification has been considered in a contracting officer's final decision. This lawsuit is governed by the Contract Disputes Act (CDA) of 1978, which applies to any express or implied contract entered into by an executive agency for the procurement of property, services, construction, alteration, repair or maintenance of real property. 41 U.S.C. § 602 (1994). Consequently, the court applies 41 U.S.C. § 605(a) which states: "All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer." *See Sharman Co. v. United States,* 2 F.3d 1564, 1569 (Fed.Cir.1993) (citing *Joseph Morton Co. v. United States,* 757 F.2d at 1279); *see also Daff v. United States,* 78 F.3d 1566, 1571, *reh'g denied, en banc suggestion declined,* (Fed.Cir.1996).

Plaintiff's argument overlooks the numerous decisions from the United States Court of Appeals for the Federal Circuit, the United States Court of Federal Claims and the Boards of Contract Appeals which have allowed the government to justify a termination for default based on factual circumstances not known to the government at the time of the default, without mention of a contracting officer's final decision on the newly discovered evidence. *See, e.g., Kelso v. Kirk Bros. Mech. Contractors, Inc.,* 16 F.3d 1173; *Joseph Morton Co. v. United*

---

7. There is no evidence in the record that exceptions to this clause were included in the bid or any addendum thereto on the contract at issue in this case.

8. There is no evidence in the record that the contract at issue in this case identified any acceptable foreign construction materials.

*States,* 757 F.2d 1273; *Daff v. United States,* 31 Fed.Cl. 682 (1994), *aff'd on other grounds,* 78 F.3d 1566; *In re Balimoy Mfg. Co. of Venice, Inc.,* A.S.B.C.A. No. 47,006, 95–2 B.C.A. ¶ 27,854, 1995 WL 461215 (1995); *In re Quality Granite Construction Co,, Inc.,* A.S.B.C.A. No. 43,846, 93–3 B.C.A. ¶ 26,073, 1993 WL 169822 (1993).

That the contracting officer need not issue a final decision for the court to have jurisdiction to consider the government's post-hoc justification of a termination for default is most strikingly demonstrated in *Joseph Morton Co., v. United States,* 757 F.2d 1273. In *Joseph Morton,* the government terminated the contractor for default based on its failure to cure deficiencies during the course of the contract. *Id.* at 1275. Following the termination for default, the contractor, Joseph Morton, was convicted in the United States District Court for the Eastern District of New York for the crime of conspiring to defraud the government by knowingly submitting false and fraudulent cost statements to the government with regard to a modification of the contract. *Id.* Joseph Morton had filed an action in the Court of Claims, which was transferred to the Claims Court upon its creation, seeking to convert the termination for default to a termination for the convenience of the government. *Id.* The government asserted, and the United States Court of Appeals for the Federal Circuit agreed, that the termination for default could be supported by Joseph Morton's fraudulent activity. *Id.* at 1277–78. While other aspects of the contract, including the government's counterclaims, were subject to the contracting officer's final decision requirement of the CDA, *id.* at 1279–81, the opinion makes no mention of a contracting officer's final decision with regard to the government's assertion that Joseph Morton had committed fraud on the contract. Moreover, that the court was aware of the requirement that government claims must be the subject of a contracting officer's final decision for the court to hold jurisdiction over them is evidenced by its detailed discussion in *Joseph Morton* of whether the CDA applied to the contract at issue. *Id.* at 1279. The court found that the CDA did apply and that it did not have jurisdiction over the government's

counterclaim based on fraud because the counterclaim was not the subject of a contracting officer's final decision. *Id.* at 1279–80. Thus, *Joseph Morton* should be read to hold that "the CDA does not alter the general rule that a default termination can be supported based on newly-discovered fraud." *Daff v. United States,* 31 Fed.Cl. at 688.

Similarly, in *Kelso v. Kirk Brothers Mechanical Contractors, Inc.,* 16 F.3d 1173, the United States Court of Appeals for the Federal Circuit also upheld a termination for default based on a post-hoc justification when the new justification had not been the subject of a contracting officer's final decision. In *Kelso,* the Navy terminated the contractor for default based on contractor caused delays. *Id.* at 1175. Although there was no stated contract completion date, the Navy failed to give the contractor time to cure the delays. *Id.* During its performance of the contract, however, the Armed Services Board of Contract Appeals found that the contractor routinely had destroyed employee time cards and omitted daily hours from weekly payrolls. *In re Kirk Bros. Mech. Contractors, Inc.,* A.S.B.C.A. No. 35,771R, 92–3 B.C.A. (CCH) ¶ 25,144, 125,342, 1992 WL 137436 (1992). The Federal Circuit found that the Davis–Bacon Act violations, as determined by the Armed Services Board of Contract Appeals, were sufficient to justify the Navy's decision to terminate the contractor for default, although not the original reason given for the termination. *Id.* at 1174–76. There is no indication in the opinion by the Federal Circuit or the Armed Services Board of Contract Appeals that the Davis–Bacon Act violations were discussed in a contracting officer's final decision. *Id.* at 1173–1176; *In re Kirk Bros. Mech. Contractors, Inc.,* A.S.B.C.A. No. 35771R, 92–3 B.C.A. (CCH) ¶ 25,144, 1992 WL 137436.

Therefore, this court concludes that it has jurisdiction to consider the defendant's claim that the government's decision to terminate Glazer Construction for default in the instant case may be justified by the violations of the Buy American Act or the Davis–Bacon Act.

## Davis–Bacon Act Violations

The defendant argues that the court must accept the DOL's final determination that

Glazer Construction violated the Davis–Bacon Act in its performance of the contract. The contract at issue includes the clause Disputes Concerning Labor Standards, FAR § 52.222–14, which states:

> The United States Department of Labor has set forth 29 CFR parts 5, 6, and 7 procedures for resolving disputes concerning labor standards requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of this contract. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

In *Emerald Maintenance, Inc. v. United States,* 925 F.2d 1425, 1428–29 (Fed.Cir.1991) the United States Court of Appeals for the Federal Circuit analyzed a disputes clause similar to the one at issue before this court. In *Emerald Maintenance,* the contract included a Wage Determination List which identified "Roofers" and "Laborers." *Id.* at 1427. After an investigation, the DOL determined that a local practice governing the performance of the contract required that "all employees who worked on roofs as part of a roofing contract be classified as Roofers." Therefore, the government requested that the contractor make restitution payments for employees who had been misclassified as laborers rather than roofers. *Id.* The contractor refused and the government withheld a total of $110,104.00 from the contractor. *Id.* The contractor then appealed to the Board, pursuant to the CDA, claiming that the Wage Determination List amounted to a defective specification. The Federal Circuit found that:

> The Disputes provision of the contracts clearly provides that disputes arising out of the labor standards provisions of the contracts are not to be subject to the Contract Disputes Act, but are to be resolved "in accordance with the procedures of the Department of Labor" (which clearly means *by* the department).

*Id.* at 1428. Noting that the dispute "concerns the contracts' wage determinations and their application" the court found that the issue arose out of "the labor standards provisions of the contracts, and the Disputes provisions require that it be resolved by Labor." *Id.* at 1429.

Similarly, the allegations, in this case, that Glazer Construction and Murray Glazer violated the Davis–Bacon Act and the wage provisions of the contract also arise out of the contract's wage determinations and their application. The government's first allegation concerns the failure to pay seven different employees pursuant to the appropriate classification in the Wage Determination List. The second allegation concerns the failure to pay its employee, Chris Graul, the appropriate wage pursuant to the Wage Determination List.

The DOL acted on this information pursuant to 29 C.F.R. § 5.12 (2001), which describes debarment procedures for contractors found to have violated the Davis–Bacon Act. Pursuant to 29 C.F.R. § 5.12(b)(1), whenever the Administrator of the Wage and Hour Division, Employment Standards Administration of the DOL or an authorized representative, finds reasonable cause to find that a contractor has committed willful or aggravated violations of the Davis–Bacon Act, the Administrator shall notify the contractor of the finding. The DOL shall advise the contractor of its right to request a hearing. *Id.* If the contractor requests a hearing, its request must be postmarked within thirty days of its receipt of the letter and may set forth any findings that are in dispute and the reasons therefore, including any affirmative defenses. *Id.* If no hearing is requested, the Administrator's findings become final within thirty days of the contractor's receipt of the letter. 29 C.F.R. § 5.12(b)(2).

In the instant case, the Administrator found reasonable cause that Glazer Construction had committed Davis–Bacon Act violations during its performance of the contract at issue in this case and sent a letter to plaintiff, dated January 4, 2002, to that effect. The record reflects a certified mail receipt dated January 5, 2002. Glazer Construction and Murray Glazer failed to request a hearing. Thus, the Administrator's finding that Glazer Construction committed Davis–Bacon Act violations became final on Febru-

ary 5, 2002. Under the Disputes clause included in the contract between plaintiff and the VA, Glazer Construction's available redress to appeal the decision by the DOL was through the DOL administrative process. Thus, this court will not disturb the DOL's findings.

Plaintiff has argued that the Davis–Bacon Act violations cannot justify the government's termination for default because the DOL did not issue a notice to cure. This argument is factually incorrect with regard to the seven misclassified employees. Glazer Construction was issued a notice to cure that violation and notified the government that it had resolved the issue. Glazer Construction's own records, as relied upon by the DOL in finding Davis–Bacon Act violations, however, show that Glazer Construction did not cure the violations as promised.

Moreover, even if the government had failed to issue a cure notice regarding the Davis–Bacon Act violations, the government could still base the termination for default upon such violations. In *McDonnell Douglas Corp. v. United States,* 35 Fed.Cl. 358, 374 (1996), *rev'd in part, vacated in part and remanded on other grounds,* 182 F.3d 1319 (Fed.Cir.1999), the court commented on the relationship between the government's requirement to issue a cure notice before terminating a contract for default and the government's ability to justify a termination for default based on a different reason than initially asserted. In this regard, the *McDonnell Douglas* court stated that the post-hoc justification must be non-curable "so that the contractor would not be prejudiced by the lack of a cure notice." *Id.* at 374. In a list of citations supporting its statement, the court included opinions in which the information upon which the post-hoc justification was based was not discovered by the government until after the contractor was terminated for default, so that no cure notice could be issued. *Id.* (citing *Kelso v. Kirk Bros. Mech. Contractors,* 16 F.3d 1173 (upholding termination for default based on Davis–Bacon Act violations unknown at the time of termination); *Samuel T. Isaac & Assocs., Inc. v. United States,* 7 Cl.Ct. 255 (1985) (upholding termination for default based on criminal conduct by contractor unknown at time of termination); *Joseph Morton Co. v. United States,* 3 Cl.Ct. 120 (upholding termination for default when contractor fraud unknown at time of termination); *In re Quality Granite Construction Co., Inc.,* A.S.B.C.A. No. 43,846, 93–3 B.C.A. (CCH) ¶ 26,073, 1993 WL 169822 (upholding termination for default supported by violations of Davis–Bacon Act which were unknown at the time of termination)). Thus, the *McDonnell Douglas* court accepted, as non-curable defects upon which a termination for default could be justified post-hoc, those reasons based upon information discovered after the termination for default. Indeed, it would be futile for the government to issue a cure notice to a contractor after the contractor had been terminated from the contract. The contractor would have no means to cure the defect, as it would have been barred from the contract site. In the instant case, the government did not identify the Davis–Bacon Act violations until after the termination for default. Therefore, the government's failure to issue a cure notice does not effect its ability to justify the termination for default upon Davis–Bacon Act violations, discovered after the termination for default was issued.

■ The plaintiff also has argued that the DOL's decision to submit Glazer Construction for debarment, in which it found that Glazer Construction violated the Davis–Bacon Act, is barred by the Act's statute of limitations. The plaintiff cites, presumably, to *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). In that case, the United States Supreme Court considered the two tiered statute of limitations which applies to "[a]ny action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages" under the Davis–Bacon Act. 29 U.S.C. § 255 (1994). Pursuant to the statute, a two year statute of limitations applies to such actions except for a cause of action arising out of a "willful violation" which may be commenced three years after the cause of action accrued. *Id.* § 255(a). In *McLaughlin,* the Court considered the definition of "willful" and found that the term meant that the "employer either

knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute ...." *McLaughlin v. Richland Shoe Co.*, 486 U.S. at 133, 108 S.Ct. 1677. While the DOL decision is outside of both the two year and three year periods, as is discussed below, the statute does not apply in the case before this court.

Pursuant to 29 U.S.C. § 255(a) (1994):

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], the Walsh–Healey Act [41 U.S.C.A. § 35 et seq.], or the Bacon–Davis Act [40 U.S.C.A. § 276a et seq.]—

(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

The United States Supreme Court, however, has interpreted the statute to confine its application to actions brought in a court. *Unexcelled Chem. Corp. v. United States*, 345 U.S. 59, 66, 73 S.Ct. 580, 97 L.Ed. 821 (1953). In *Unexcelled Chem. Corp.*, the Court found that when Congress included the word "action" in the statute, it:

was addressing itself to law suits in the conventional sense. Commencement of an action by the filing of a complaint has too familiar a history and the purpose of §§ 6 and 7 [29 U.S.C. § 255–56] was too obvious for us to assume that Congress did not mean to use the words in their ordinary sense.

*Id.* Thus, courts have found that 29 U.S.C. § 255 does not apply to administrative actions. *See Glenn Elec. Co. v. Donovan*, 755 F.2d 1028, 1034 n. 7 (3d Cir.1985); *Ball, Ball and Brosamer, Inc. v. Martin*, 800 F.Supp. 967, 975 (D.D.C.1992), *vacated on other grounds*, 24 F.3d 1447 (D.C.Cir.1994). Because the DOL's debarment procedure was entirely administrative, the statute of limitations included in 29 U.S.C. § 255 does not apply.

■ Based on the above discussion, the court finds that the plaintiff committed Davis–Bacon Act violations during performance of the contract sufficient to justify the defendant's termination for default. Therefore, it is unnecessary for the court to further discuss defendant's additional, alleged Buy American Act violations.

## CONCLUSION

Pursuant to the above discussion, the court **GRANTS** defendant's partial motion for summary judgment on Count II of plaintiff's claim and for any and all claims related to plaintiff's allegation that the termination for default was unjustified. After consultation with the parties, the previously established trial schedule will be amended to reflect the conclusions of this opinion.

**IT IS SO ORDERED.**