16 F.3d 1173
 Admiral Frank B. KELSO, II, Acting Secretary of the Navy, Appellant,
v.
KIRK BROTHERS MECHANICAL CONTRACTORS, INC., Appellee.
KIRK BROTHERS MECHANICAL CONTRACTORS, INC., Appellant,
v.
Admiral Frank B. KELSO, II, Acting Secretary of the Navy, Appellee.
 Nos. 92-1567, 93-1011.
 United States Court of Appeals,
Federal Circuit.
 Jan. 13, 1994.
 
 Helen Rosen, Office of the General Counsel, Department of the Navy, of Washington, D.C., argued for appellant/appellee. With her on the brief was John Dietrich. Also on the brief were Stuart M. Gerson, Assistant Attorney General, David M. Cohen, Director, Thomas W. Petersen, Assistant Director, Stuart E. Schiffer, Acting Assistant Attorney General and Mark A. Melnick, Attorney, Commercial Litigation Branch, Department of Justice, of Washington, D.C.
 Francis X. Clark, Silverman, Clark & Van Galen, P.C., of King of Prussia, Pennsylvania, argued for appellee/appellant. With him on the brief was John H. Kiefel.
 Before LOURIE, Circuit Judge, SKELTON, Senior Circuit Judge, and RADER, Circuit Judge.
 RADER, Circuit Judge.
 
 
 1
 Under the Contract Disputes Act, 41 U.S.C. Secs. 606-07 (1988 & Supp. IV 1992), Kirk Brothers Mechanical Contractors (Kirk) appealed several claims to the Armed Services Board of Contract Appeals. The United States Department of the Navy had terminated Kirk's Contract No. N62472-82-C-0099 for default. The Board awarded Kirk a $1,017.20 price increase and converted the default termination to a termination for the convenience of the Government. The Board refused to sustain the default based on deficiencies in federal labor reporting requirements. Because deficiency in labor reporting is adequate grounds for default, this court reverses that portion of the Board's decision. This court affirms the rest of the Board's decision.
 
 BACKGROUND
 
 2
 On March 19, 1985, the Department of the Navy awarded Kirk a contract to construct an air refrigeration system at the Naval Air Propulsion Center in Trenton, New Jersey. The purpose of the system was to supercool fast moving air to simulate high altitude flight conditions.
 
 
 3
 The contract required the Navy to furnish an Air Side Distributed Control System (Air Side DCS) to facilitate final testing, balancing, and start up of the system. Although scheduled for delivery a short time after the award of the contract, the Air Side DCS was not delivered on time. Because of Kirk's delays, the Navy removed Kirk from the project. After discovery of deficiencies in Kirk's work, the Navy terminated the contract for default. At the time of Kirk's removal, the contract had no completion date. Despite the absence of a completion date, Kirk received no time to correct its deficiencies.
 
 
 4
 During contract performance, Kirk also routinely destroyed employee time cards. Moreover Kirk omitted daily hours on weekly payrolls after May 11, 1986. These practices are violations of the federal labor reporting standards. See 40 U.S.C. Secs. 276a to 276a-7 (1988) (Davis-Bacon Act); 29 C.F.R. Sec. 5.5(a)(3)(i) (1993); 40 U.S.C. Sec. 276c (1988) (Copeland Anti-Kickback Act) and its implementing regulation 29 C.F.R. Secs. 3.1-.11 (1993). Kirk did maintain its daily reports of the inspector (DRIs). During proceedings before the Board, the Navy first sought to sustain its default termination on the alternative ground that Kirk did not comply with federal labor reporting standards.
 
 
 5
 The Board determined that the Navy's failure to provide the Air Side DCS delayed Kirk's performance. However, because of concurrent delay by Kirk, the Board awarded no damages. The Board rejected the default termination because Kirk received no opportunity to correct its work deficiencies. Without a contract completion date, the Board reasoned, Kirk deserved a chance to improve its performance. Finally, the Board, over the dissents of the acting chairman and vice chairman, rejected the alternative grounds for default based on Kirk's violation of federal labor reporting standards. The Board determined instead that retention of the daily reports of the inspector satisfied the "basic records" requirements of federal labor reporting standards.
 
 DISCUSSION
 Retention of Basic Records
 
 6
 This court sustains a default termination if justified by circumstances at the time of termination, regardless of whether the Government originally removed the contractor for another reason. Joseph Morton Co. v. United States, 757 F.2d 1273, 1277 (Fed.Cir.1985). The Board determined that Kirk's failure to comply with federal labor reporting regulations did not justify the Navy's termination for default. Interpretation of the federal labor regulations incorporated into Kirk's contract is a question of law which this court reviews de novo. United States v. Lockheed Corp., 817 F.2d 1565, 1567 (Fed.Cir.1987).
 
 
 7
 The contract between Kirk and the Navy included the following Payrolls and Basic Records Clause:
 
 
 8
 The Contractor shall maintain payrolls and basic records relating thereto during the course of the work and shall preserve them for a period of three (3) years thereafter for all laborers and mechanics.... Such records shall contain the name and address of each such employee, his correct classification, rate of pay (including ... fringe benefits), daily and weekly number of hours worked, deductions made and actual wages paid.
 
 
 9
 * * * * * *
 
 
 10
 (b) The Contractor shall submit weekly a copy of all payrolls to the Contracting Officer.
 
 
 11
 The contract also included a Contract Termination--Debarment Clause stating that noncompliance constitutes grounds for termination of the contract and for debarment.
 
 
 12
 These clauses ensure compliance with the Davis-Bacon Act and the Copeland Anti-Kickback Act. Under the Davis-Bacon and Copeland Anti-Kickback Acts, public contracts in excess of $2,000 are subject to labor reporting standards set by the Department of Labor. 40 U.S.C. Sec. 276c (1988); 29 C.F.R. Sec. 5.5(a).
 
 
 13
 The Payrolls and Basic Records clause of Kirk's contract requires retention of "payrolls and basic records relating thereto." This provision ensures compliance with the Davis-Bacon Act which protects the employees of Government contractors. United States v. Binghamton Constr. Co., 347 U.S. 171, 176-77, 74 S.Ct. 438, 441-42, 98 L.Ed. 594 (1954). The primary enforcement mechanism to protect these employees is the contractual requirement that Government contractors retain payrolls as well as any underlying basic payroll records. 29 C.F.R. Sec. 5.5(a)(3)(i). With all records available, an audit can easily and swiftly detect payroll errors. Compliance with the recording requirements of the Department of Labor thus effectuates the purposes of the Davis-Bacon and Copeland Anti-Kickback Acts.
 
 
 14
 In the early 1980s, the Department of Labor considered alterations to the regulatory system of the Davis-Bacon and Copeland Anti-Kickback Acts. One change would have allowed contractors to submit a weekly statement of compliance in lieu of the actual weekly payrolls. The United States Court of Appeals for the District of Columbia Circuit affirmed an injunction preventing that change. Building & Constr. Trades' Dep't v. Donovan, 712 F.2d 611 (D.C.Cir.1983), cert. denied, 464 U.S. 1069, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984). The D.C. Circuit underscored the statutory need for retention of extensive basic records:
 
 
 15
 Both of these provisions are most naturally read if one attaches an investigatory purpose to the act, that is, if the requirement was intended to aid in uncovering, not merely punishing, violations.
 
 
 16
 Id. at 631. This court agrees that retention of basic records is essential to the enforcement mechanisms of the Acts. In the event of an investigation, retention of basic records under 29 C.F.R. Sec. 5.5(a)(3)(i) verifies the reliability of the contractor's payrolls. Without retention of the basic records underlying the payrolls, an audit could be reduced to guesswork. For this reason, the regulations require retention of sufficient basic records to verify information in the contractor's weekly payrolls. Building & Constr., 712 F.2d at 631-33.
 
 
 17
 Kirk did not comply with the Payrolls and Basic Records Clause of its contract or the regulations requiring retention of basic records under the Davis-Bacon and Copeland Anti-Kickback Acts. Kirk instead destroyed its employee time cards. As both the acting chairman and vice chairman of the Board noted, without these time cards, investigators would lack a check on the accuracy of the DRIs and the weekly payroll. These employee time cards are precisely the type of basic record necessary to verify the accuracy of the weekly payroll.
 
 
 18
 Moreover, Kirk did not retain records showing the daily hours worked by employees after May 11, 1986. Thus, Kirk's payroll submissions after May 11, 1986 also violate the promulgated regulations. The Board agreed that this reporting failure breached the labor reporting standards.
 
 
 19
 In sum, even though these reporting standards are not related to contract performance, failure to comply with federal labor standards may justify a default termination. The protections of the Davis-Bacon and Copeland Anti-Kickback Acts, as incorporated into strict contract terms, bind a contractor. Violations of these requirements are not mere technicalities. Accordingly, based on Kirk's failure to retain basic records and make the required submissions, this court reverses the Board's decision on default termination.
 
 Concurrent Delay
 
 20
 This court reviews the Board's fact finding only for arbitrariness, capriciousness, lack of substantial evidence, or bad faith. 41 U.S.C. Sec. 609(b) (1988). After fifty-three days of trial, the Board found that the Navy's failure to provide timely the Air Side DCS caused delay for the entire period of Kirk's performance. However, the Board also found that Kirk concurrently contributed to the delays. When both parties share responsibility for delays, neither merits damages unless the delays can be apportioned between the parties. William F. Klingensmith, Inc. v. United States, 731 F.2d 805, 809 (Fed.Cir.1984).
 
 
 21
 The Board determined that absence of the Air Side DCS only delayed Kirk from starting up the system, balancing, and performing final acceptance tests. Therefore, the Navy's delay did not interfere with the project's critical path. See G.M. Shupe, Inc. v. United States, 5 Cl.Ct. 662, 728 (1984) ("The reason that the determination of the critical path is crucial to the calculation of delay damages is that only construction work on the critical path had an impact upon the time in which the project was completed."). This court discerns no error in the Board's determination that there was no period in which the Government was the sole cause of the delay. Finally, after review, this court affirms the remainder of the Board decision, including denials of Kirk's claim for total cost damages.
 
 CONCLUSION
 
 22
 The retention of basic records and submission of adequate payroll information are requirements of both Kirk's contract and the regulations implementing the Davis-Bacon and Copeland Anti-Kickback Acts. A breach of these requirements justifies a termination for default. This court reverses the Board's conversion of this default into a default for the convenience of the Government. This court affirms the rest of the Board's decision.
 
 COSTS
 
 23
 Each party to bear its own costs.
 
 
 24
 AFFIRMED-IN-PART, REVERSED-IN-PART.