ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Consorzio Stabile GMG S.c.ar.l. | ) | ASBCA No. 62753 |
| | ) | |
| Under Contract No. N33191-14-D-1050 | ) | |

APPEARANCE FOR THE APPELLANT:      Marc Lamer, Esq.
      Kostos and Lamer, P.C.
      Philadelphia, PA

APPEARANCES FOR THE GOVERNMENT:      Craig D. Jensen, Esq.
      Navy Chief Trial Attorney
      Patricia Walter, Esq.
      Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE HERZFELD

The Department of the Navy (Navy) awarded a task order to Consorzio Stabile GMG S.c.ar.l. (Consorzio) to design and construct a vestibule and replace the doors at Building 261, NSA-I in Bahrain. The Navy terminated Consorzio's task order for default and justifies its termination based on Consorzio's failure to make progress in performing the task order. Consorzio asserts that the Navy wrongfully terminated the contract for default because the Navy waived the performance date and failed to create a new performance date. Consorzio seeks to have the termination converted into a termination for convenience. The parties filed briefs on the record, waived a hearing, and requested the Board issue a decision under Board Rule 11. The Board has jurisdiction of this appeal under the Contract Disputes Act (CDA) of 1978, 41 U.S.C. § 7105(e)(1)(A). We sustain the appeal and convert Consorzio's default termination to a termination for convenience.

FINDINGS OF FACT

On September 17, 2014, the Navy, through the Naval Facilities Engineering Command Europe Africa Central, awarded Consorzio an indefinite delivery/indefinite quantity multiple-award construction Contract No. N33191-14-D-1050 (the Contract) to design/build-design/bid/build new construction, renovation, alteration, and repair projects at areas in Bahrain and the United Arab Emirates (R4, tab 36; U.S. Department of Defense, Contract Awards for Sept. 17, 2014).[1]

---

[1] https://www.defense.gov/News/Contracts/Contract/Article/606022/ (visited on Apr. 27, 2023).

On July 31, 2018, the Navy awarded Consorzio Task Order No. N3319118F4309 (the Task Order), which called for Consorzio to design and construct a vestibule and repair or replace the doors at Building 261, NSA-I in Bahrain for $853,000 (R4, tab 6 at 404, 409).[2] The Task Order required Consorzio to:

> (a) commence work under this contract within 15 calendar days after the date the Contractor receives the notice to proceed, (b) prosecute the work diligently, and (c) complete the entire work ready for use not later than **425 calendar days of award**. The time stated for completion shall include final cleanup of the premises.

(R4, tab 6 at 407) (emphasis in original). The Task Order specifically identified September 29, 2019, as the completion date (R4, tab 6 at 406). The Task Order included a Liquidated Damages provision, which set a $400 rate for each calendar day of delay (R4, tab 6 at 407 (incorporating Federal Acquisition Regulation (FAR) 52.211-12, LIQUIDATED DAMAGES – CONSTRUCTION (SEP 2000)).

The Task Order required Consorzio to submit its detailed construction phasing plan for the Navy's approval at the kickoff meeting, which occurred on September 6, 2018 (R4, tab 4 at 267, 11 at 422, 12 at 424). The construction phasing plan would indicate the sequence of work and timeline for the blast-resistant doors, interior doors, and other exterior doors requiring repairs (R4, tab 4 at 267). Consorzio submitted its performance guarantee as required by the Task Order on October 9, 2018, but not its phasing plan (R4 tabs 7 at 411-14, 8 at 415; gov't br. at 3).

The parties held a progress meeting on December 18, 2018, regarding the Task Order (and other projects). During this meeting, Consorzio committed to providing its phasing plan to Navy personnel no later than December 22, 2018 (R4, tab 10 at 420). The Navy emphasized to Consorzio the project's high visibility and the need for timely completion (R4, tab 10 at 420). Consorzio responded that, if necessary, it would deploy additional workers from Italy to ensure timely completion of the project (R4, tab 10 at 420).

On January 27, 2019, the Navy issued a letter of concern for lack of progress on the project (R4, tab 12). The Navy's letter stated that, "40% of the contract time has elapsed," Consorzio's "65% design package was 45 days late," and Consorzio still had yet to submit its detailed phasing plan originally due at the September 6, 2018 kickoff

---

[2] The Navy has numbered the Rule 4 file with a leading prefix of GOV followed by zeroes prior to the page number. For ease of reference, we cite the page numbers without the prefix and leading zeroes.

meeting (R4, tab 12 at 424). The Navy's letter expressed concern that Consorzio could not "complete the required work by the contract's completion date of September 29, 2019" unless it took immediate action (*id.*).

Referencing the Contract's default provision, the Navy also advised Consorzio to provide documentation justifying Consorzio's position if circumstances outside of its control were preventing timely execution of the contract, reminding Consorzio that the Navy would assess liquidated damages of $400 per day for each calendar day of delay in accordance with the Contract (*id.*; *see also* R4, tab 36 at 656 (incorporating by reference FAR 52.249-10 – DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984)). Additionally, the Navy directed Consorzio to provide the Navy within 10 days a written plan, an updated schedule, and a detailed phasing plan indicating how it would complete the project by the contract's completion date (R4, tabs 11 at 422, 12 at 424).

Consorzio submitted its phasing plan on February 9, 2019 (R4, tab 13). The plan indicated that Phase I would require 58 days to complete, beginning on March 18, 2019, and ending on May 14, 2019; Phase II would require 60 days to complete, beginning on May 7, 2019, and ending on July 7, 2019; and Phase III would require 79 days to complete, beginning on July 8, 2019, and ending on September 25, 2019 (*id.* at 430-42).

By letter dated February 10, 2019, Consorzio responded to the Navy's January 27, 2019 letter of concern (R4, tab 14). Consorzio indicated that circumstances beyond its control had prevented the timely submission of some design steps and stated that it was "gathering . . . supporting documents" to request a time extension (*id.*). Consorzio emphasized that it was taking immediate action to make up for lost time and that it believed it could complete the project on time (*id.*; Mattivi decl. ¶ 10).[3]

Consorzio encountered difficulty procuring the doors necessary to complete the project from the Italian supplier it had intended to utilize because of "issues with the technical documentation for the doors" (D'Amico decl. ¶ 4; see also R4, tab 20 at 456).[4] On June 3, 2019, Consorzio proposed to resolve the difficulties with the documentation for the doors by installing anti-blast steel doors instead of aluminum doors (D'Amico decl. ¶ 5; app. ex. A at 1 (Request for Information)). Consorzio stated that aluminum blast-resistant doors meeting the Anti-Terrorism/Force Protection requirements of the Task Order were unavailable and requested permission to install the steel doors at no additional cost to the Navy (app. ex. A at 1; Mattivi dec. ¶ 11).

---

[3] Ms. Jennifer Mattivi was the Navy's contracting officer (Mattivi decl. ¶ 1).
[4] Mr. Matteo D'Amico was a project manager for Consorzio (D'Amico decl. ¶ 1).

On June 24, 2019, a Navy contract specialist indicated agreement with Consorzio's request, proposed that any change should be in accordance with the Contract's Changes clause, requested a proposal from Consorzio to install blast-resistant steel doors in lieu of blast-resistant aluminum doors, and indicated that Consorzio should justify any request for a time extension (D'Amico decl. ¶ 6; Mattivi decl. ¶ 12; app. ex. B; R4, tab 36 at 660-61 (Contract incorporating FAR 52.243-4 – CHANGES (JUNE 2007)).[5]

On July 8, 2019, Consorzio submitted its proposal for a downward price adjustment of $45,285.59 and requested a 180-day time extension (D'Amico decl. ¶ 7; app. ex. C). On August 26, 2019, the Navy accepted Consorzio's architectural drawings and final designs submitted on August 7, 2019 (R4, tab 15 at 445; Mattivi decl. ¶ 13).

On September 8, 2019, the Navy issued unilateral Modification No. P00001, including a "PARTIAL NTP" (Notice to Proceed) (R4, tab 15 at 445). According to the partial Notice to Proceed, the Navy acknowledged accepting Consorzio's final design submissions and directed Consorzio to proceed with "Exterior Door Repair & Replacement only at D1, D9 through D30, E1 through E5 locations" and "Interior Door Repair & Replacement only at D31, D32, D33, and D34 locations" (*id.*). Modification No. P00001 stated that "[t]he Contract Completion Date remains unchanged" (*id.*).

On September 25, 2019, Consorzio submitted proposed specifications and drawings for the doors and hardware to the Navy (app. supp. R4, tab 1; DeChavez decl. ¶ 7).[6] Consorzio did not complete the project as of September 29, 2019, the contract's completion date. At this time, the Navy had not accepted Corsorzio's full design and Consorzio's production had not started. (Mattivi decl. ¶ 15; Comfort decl. ¶ 6).[7]

On or about September 29 or 30, 2019, the Navy's supervisory contract specialist issued a Contractor Performance Assessment Report (CPAR) to Consorzio, giving the company Marginal and Unsatisfactory ratings (R4, tabs 16 at 446, 20 at 454). The Navy (1) noted that the September 29, 2023 contract completion date had

---

[5] Mr. D'Amico's declaration states that the Navy contract specialist agreed to Consorzio's request on June 28, 2019 (ex. A-2 – D'Amico decl. ¶ 6), but the contract specialist's digital signature on the document identified as Exhibit B is dated June 24, 2019.

[6] Mr. Marlito DeChavez was the quality control manager for Consorzio (DeChavez decl. ¶ 1).

[7] Ms. Renee Comfort was Chief of Contracts for the Department of the Navy, Navy Facilities Engineering Command Europe Africa Central (Comfort decl. ¶ 1).

passed and Consorzio had not begun construction, (2) detailed Consorzio's delay in submitting the 65% design package, 100% design package, and designs for the new steel doors, (3) complained that Consorzio had not provided a project manager to work in Bahrain, and (4) would not recommend Consorzio for future projects (R4, tab 20 at 455).

On October 15, 2019, Consorzio received an email from the Navy's contracting officer's representative, with questions regarding Consorzio's September 25, 2019 submittal (app. supp. R4, tab 2 at 14; DeChavez decl. ¶ 8). The email made no mention of the CPAR and did not assert a reservation of rights or an intent to impose liquidated damages as a remedy for Consorzio's failure to meet the contract completion date (app. supp. R4, tab 2 at 14; DeChavez decl. ¶¶ 8, 9).

On October 23, 2019, Consorzio responded to the CPAR and did not concur with the Navy's assessment (R4, tab 20 at 456). Consorzio recounted that it could not find a supplier that could provide aluminum doors that met the Task Order's requirements but solved this problem by providing steel doors instead (id.). Contrary to the Navy's assertion, Consorzio also noted that its project manager had been in Bahrain (id.). Consorzio requested that the Navy reconsider its CPAR evaluation (id.).

By email dated October 27, 2019, the Navy's contracting officer's representative asked when Consorzio expected designer of record-approval on the submitted steel door material (app. supp. R4, tab 3 at 19; DeChavez decl. ¶ 10). Again, the Navy did not mention the imposition of liquidated damages for Consorzio's delay or reserve the government's rights (app. supp. R4, tabs 2-3; DeChavez decl. ¶¶ 9, 11).

On October 28, 2019, Consorzio responded that the package had been revised by the designer of record and would be finalized once the modification changing the contract price was executed (app. supp. R4, tab 4 at 21; DeChavez decl. ¶ 12). Consorzio also inquired about a meeting to negotiate a modification for this work (app. supp. R4, tab 4 at 21).

On November 5, 2019, Consorzio sent the Navy's contracting officer's representative (copying two contract specialists) a revised proposal for Modification No. P00001's downward price adjustment along with a 250-day time extension, and requested a meeting to negotiate the price adjustment (app. supp. R4, tab 5; DeChavez decl. ¶ 14). On November 9, 2019, Consorzio requested information from the Navy's contracting officer's representative (copying a Navy engineer technician) on the status of its pending submittals (app. supp. R4, tab 6, DeChavez decl. ¶ 17).

In an exchange of emails on November 9 and 10, 2019, a Navy contract specialist alerted Consorzio to several errors in its price adjustment submittal, which

Consorzio corrected and resubmitted that same day (app. supp. R4, tab 7 at 35; DeChavez decl. ¶ 19). Consorzio requested "a meeting in order to finalize the mod and expedite [t]he process" (app. supp. R4, tab 7 at 36). At no time during this exchange did the Navy's contract specialist make any mention of liquidated damages or reserve the government's rights regarding default (app. supp. R4, tab 7).

By email dated November 24, 2019, Consorzio sent the Navy's contracting officer's representative (copying a contract specialist and engineer technician) a "Dirt & Dust Control Plan" for review and approval (app. supp. R4, tab 8; DeChavez decl. ¶ 21). On November 26, 2019, Consorzio emailed the Navy's contracting officer's representative (copying a Navy contract specialist and two engineer technicians), asking for an update on approval of its submittal (DeChavez decl. ¶ 23).

On December 2, 2019, the Navy's reviewing official denied Consorzio's request to reconsider the CPAR, noting the "CPARS ratings are valid" (R4, tab 20 at 456). The Navy recognized that Consorzio had "challenges with the aluminum doors" but failed to raise the door issue in a "timely manner," which resulted in delays (*id.*). As to Consorzio's rebuttal that it had a project manager in Bahrain, the Navy countered that Consorzio's organizational chart did not state that individual was the project manager (*id.*).

By email dated December 5, 2019, Consorzio asked the Navy's contracting officer's representative (copying a contract specialist and engineer technician) if its hardware package had been reviewed (app. supp. R4, tab 10; DeChavez decl. ¶ 25). By email dated December 7, 2019, Consorzio sent the Navy's contracting officer's representative (copying a Navy contract specialist and engineer technician) a "baseline schedule" showing work commencing on December 16, 2019 and being completed by March 11, 2020 (app. supp. R4, tab 12; DeChavez decl. ¶ 27).

By email dated December 14, 2019, Consorzio asked the Navy's contracting officer's representative (copying a contract specialist and engineer technician) if the Navy's review of its hardware submittal had been completed, and if so, to provide a signed "Transmittal Sheet" (app. supp. R4, tab 13 at 93; DeChavez decl. ¶ 29). By email dated December 15, 2019, the Navy's contracting officer's representative (copying a contract specialist and engineer technician) informed Consorzio that a new Navy construction manager had been appointed (app. supp. R4, tab 14; DeChavez decl. ¶ 31). The Navy's email made no mention of liquidated damages or reserving the government's rights regarding default (app. supp. R4, tab 14).

By email dated December 21, 2019, Consorzio resubmitted its pending hardware submittal to the Navy's new construction manager (copying the contracting officer's representative, contract specialist, and engineer technician) (app. supp. R4, tab 15; DeChavez decl. ¶ 34). By email dated January 6, 2020, the Navy's project

6

manager approved Consorzio's hardware submittal, but made no mention of liquidated damages or reserving the government's rights (app. supp. R4, tab 16; DeChavez decl. ¶ 36).

On January 5, 2020, the Navy issued a cure notice expressing concern about the "apparent lack of progress" on the Task Order (R4, tab 22; *see also* Comfort decl. ¶ 7). The cure notice advised that (1) the September 29, 2019 contract completion date had "lapsed," (2) performance of the Task Order was incomplete, (3) the Navy was "considering terminating" the Task Order for default, and (4) Consorzio must present facts bearing on the issues raised in the cure notice within 10 days (R4, tab 22 at 459). For the first time since the September 29, 2019 contract completion date, the cure notice stated that liquidated damages in the amount of $200.00 (less than the Task Order's $400 amount) would be assessed for each calendar day of delay (R4, tab 22 at 460). However, Consorzio never received the cure notice (D'Amico supp. decl. ¶¶ 2, 3). And, the record includes no indication that the Navy ever assessed Consorzio with liquidated damages.

On January 15, 2020,[8] Consorzio submitted a request to the Navy's construction manager seeking a change in the push bar and locking mechanism for the panic exit doors (D'Amico decl. ¶ 16; app. ex. D). That same day, the construction manager replied with instructions for Consorzio to provide product data/technical specifications and shop drawings, but he neither mentioned the cure notice nor imposition of liquidated damages (D'Amico decl. ¶¶ 17, 18; app. ex. E). On February 17, 2020, Consorzio responded with the data that the Navy requested (D'Amico decl. ¶ 19; app. ex. F).

On February 11, 2020, the Navy issued a show cause notice to Consorzio because the contractor "failed to perform" the Task Order "within the time required by its terms" and the Navy was "considering terminating the contract" for default (R4, tabs 24-25). The show cause notice advised Consorzio that it had 10 days to present facts excusing its failure to perform to the contracting officer (R4, tab 25). The show cause notice made no mention of liquidated damages, but asserted that "any acceptance by the Government of delinquent goods or services will be solely for the purpose of mitigating damages" and not meant "to waive any rights the Government has under the contract" (*id.*).

Upon receiving the show cause notice, Consorzio requested a meeting with the Navy, which occurred in Bahrain on February 13, 2020 (D'Amico decl. ¶¶ 21-22). Consorzio's project manager explained to the Navy's contracting officials the issues

---

[8] Mr. D'Amico's declaration stated that he submitted the request on January 15, 2020, but the document identified as Exhibit D is dated January 14, 2020 (D'Amico decl. ¶ 16; app. ex. D).

that had adversely affected performance and the ongoing discussions to gain approval for the push bar and locking mechanism (*id*. ¶ 23). The Navy directed Consorzio to respond to the show cause notice in writing (*id.* ¶ 24).

On February 17, 2020, Consorzio responded in writing to the show cause notice (R4, tab 26). As it did in its CPARS response, Consorzio explained that the Navy determined that the anti-blast aluminum door it selected during the contract's bidding phase did not meet the contract's requirements and that it subsequently learned that no aluminum blast-resistant door met the Task Order's requirements (R4, tab 26 at 465). Consorzio also pointed out that the Navy bore some responsibility for the design delays (*id.*). Consorzio acknowledged that the unavailability of aluminum doors that could meet the Task Order requirements resulted in a design delay, which meant that Consorzio would be unable to deliver the steel doors before November 2020 (R4, tab 26 at 466-67).

On February 17, 2020 (the same day as its response to the show cause notice), Consorzio placed an order for hardware given the recent Navy approval of its submittals (D'Amico decl. ¶ 26; app. ex. G). On February 19, 2020, Consorzio engaged a subcontractor for installation (D'Amico decl. ¶ 26; app. ex. G).

On February 20, 2020, the Navy responded to Consorzio's February 17, 2020 response to the Navy's show cause notice (R4, tab 27). First, the Navy acknowledged "that there were government delays during the design phase," including changing some requirements that the Navy asserted were meant to give Consorzio "more relaxed requirements" (*id.* at 468). Second, the Navy stated that "recovery of this project in terms of schedule management is not possible; the contract is passed the contract completion date" resulting in the Navy's lack of "confidence in the contractor's ability to complete this project" in the proposed timeline (*id.*). The Navy stated that Consorzio had failed to meet any previous timelines, had failed to submit a time impact analysis to justify time extensions for any of the delays, and did not appear to have a "management team properly managing the project, staff, and timelines" (*id.*). Third, the Navy expressed a lack of confidence in Consorzio's plans to "rectify the project" given the inadequate responses to the Navy's letter of concern, the CPARS evaluation, and January 5, 2020 cure notice (which Consorzio never received) (*id.*).

On March 7, 2020, Consorzio sent revisions to its quality control plan, accident prevention plan, critical path schedule, and phasing plan (D'Amico decl. ¶ 27; app. ex. H). Also, Consorzio notified the Navy of "some logistical problems related to the COVID-19 virus" that limited flights from Italy to Bahrain for Italian-based project management personnel (app. ex. H).

On March 11, 2020, the Navy's contracting officer issued Modification No. P00002, directing Consorzio to cease all work on the project in accordance with

8

FAR 52.242-14, SUSPENSION OF WORK (APR 1984) (R4, tab 28; R4, tab 36 at 656 (incorporating Suspension of Work clause)).

On September 15, 2020, the Navy's contracting officer issued a final decision terminating the Task Order for default (R4, tab 32). The Navy cited Consorzio's "failure to perform the required work within the time specified in the contract" as the reason for the default termination and Consorzio's "failure to perform is not excusable" (R4, tab 32 at 484).

On December 11, 2020, Consorzio timely appealed the contracting officer's final decision to terminate the Task Order for default to the Board.

DECISION

I.      *Standard of Review*

Board Rule 11 allows the parties to waive a hearing and submit their appeal on the record. Board Rule 11(a). "Unlike a motion for summary judgment, which must be adjudicated on the basis of a set of undisputed facts, pursuant to Board Rule 11, the Board 'may make findings of fact on disputed facts.'" *U.S. Coating Specialties & Supplies, LLC*, ASBCA No. 58245, 20-1 BCA ¶ 37,702 at 183,031 (quoting *Grumman Aerospace Corp.*, ASBCA No. 35185, 92-3 BCA ¶ 25,059 at 124,886 n.13).

II.     *The Navy Can Change the Basis of Termination from Failure to Deliver to Failure to Make Progress*

A termination for default is "a drastic sanction which should be imposed (or sustained) only for good grounds and on solid evidence." *Delfasco LLC*, ASBCA No. 59153, 17-1 BCA ¶ 36,659 at 178,526 (quoting *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987)). "[D]efault terminations, as a species of forfeitures, are to be strictly construed." *Kisco Co. v. United States*, 610 F.2d 742, 750 (Ct. Cl. 1979).

"[A] termination for default is a government claim . . . ." *Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1363 (Fed. Cir. 2018). As the proponent of the claim, the government bears the burden of proving that the termination for default was justified by a preponderance of the evidence. *Delfasco LLC*, 17-1 BCA ¶ 36,659 at 178,526. Only if the government satisfies its burden of proving that the termination for default was justified does the burden shift to the contractor to demonstrate that (1) its default was excusable, (2) the government's termination decision was arbitrary, capricious, or an abuse of discretion, or (3) default was caused by the government's material breach of the contract. *DCX, Inc. v. Perry*, 79 F.3d 132, 134 (Fed. Cir. 1996) ("The Board found that the government met its burden of proving that [the contractor]

9

did not perform in a timely fashion, and that [the contractor] failed to meet its burden of proving that its nonperformance was excusable."); *Pyrotechnic Specialties, Inc*, ASBCA No. 57890 *et al.*, 17-1 BCA ¶ 36,696 at 178,692 ("If the government satisfies its burden of proving that the termination for default was justified, then appellant must prove that its default was excusable, caused by the government's material breach, or that the CO's termination decision was arbitrary, capricious or an abuse of discretion."), *aff'd*, 835 F. App'x 607 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 344 (2021). However, as the proponent of the affirmative defense of waiver of the contract date, the contractor bears the burden of proof. *DayDanyon Corp.*, ASBCA No. 57681, 15-1 BCA ¶ 36,073 at 176,151, *aff'd*, 673 F. App'x 997 (Fed. Cir. 2017).

"The default clause of the contract establishes the possible grounds for a termination for default." *Pyrotechnic Specialties*, 17-1 BCA ¶ 36,696 at 178,692. The standard fixed-price construction default clause permits the government to terminate the Contract for default where "the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in this contract including any extension, or fails to complete the work within this time . . . ." FAR 52.249-10(a); (*see also* R4, tab 36 at 656 (incorporating this clause by reference)). Here, the Navy's contracting officer's decision based the default termination on Consorzio's "failure to perform the required work within the time specified in the contract" (R4, tab 32). On appeal, the Navy has changed its rationale and now justifies its termination decision on Consorzio's failure to make progress in completing the project (gov't br. at 9-11).

Consorzio takes issue with the Navy now justifying the default based on a failure to make progress rather than a failure to perform by the contract completion date (app. reply at 3-5). However, "[o]ur decisions have consistently approved default terminations where the contracting officer's ground for termination was not sustainable if there was another existing ground for a default termination, regardless of whether that ground was known to the contracting officer at the time of the termination." *Empire Energy Mgmt. Sys., Inc. v. Roche*, 362 F.3d 1343, 1357 (Fed. Cir. 2004); *Kelso v. Kirk Bros. Mech. Contractors, Inc.*, 16 F.3d 1173, 1175 (Fed. Cir. 1994) ("This court sustains a default termination if justified by circumstances at the time of termination, regardless of whether the Government originally removed the contractor for another reason."). Thus, we must review the totality of the circumstances existing at the time of the termination to determine whether the Navy can justify defaulting Consorzio for failure to make progress or whether the Navy waived that basis of default. *Pyrotechnic Specialties*, 17-1 BCA ¶ 36,696 at 178,699-700.

10

III.    *The Navy Has Failed To Justify Terminating Consorzio for Default*

Consorzio argues that the Navy waived the completion date and cannot justify the termination because it failed to establish a new date (app. br. at 7-12; app. reply at 3-5). The Navy asserts that Consorzio failed to make adequate progress on the project and failed to provide adequate assurance of timely performance or cure (gov't br. at 9-12). We agree with Consorzio and hold that the Navy waived the completion date and failed to establish a new date for completion.

A.    *The Navy Waived the Project Completion Date*

To justify terminating a contractor for default for failure to make adequate progress so as to endanger performance of the contract, an agency must demonstrate that there was no reasonable likelihood the contractor could perform the entire project within the time remaining for contract performance. *DODS, Inc.*, ASBCA Nos. 57746, 58252, 14-1 BCA ¶ 35,677 at 174,626 (citing *Lisbon Contractors*, 828 F.2d at 765). The government is not required to prove that timely performance of the contract was impossible; rather, "a demonstrated lack of diligence indicat[ing] that [the government] could not be assured of timely completion" is sufficient. *Lisbon Contractors*, 828 F.2d at 765 (internal citation omitted).

The Navy argues that Consorzio failed to make adequate progress on the project and failed to provide adequate assurance of timely performance or cure (gov't br. at 9-12). Consorzio contends that the Navy cannot justify its default decision because the Navy waived the contract's completion date (app. br. at 8-12; app. reply at 3-5).

Government waiver of a completion date occurs when two conditions are present: "(1) failure to terminate within a reasonable time after the default under circumstances indicating forbearance, and (2) reliance by the contractor on the failure to terminate and continued performance by him under the contract, with the Government's knowledge and implied or express consent." *DeVito v. United States*, 413 F.2d 1147, 1154 (Ct. Cl. 1969). "The purpose of the waiver doctrine is to protect contractors who are led to believe that time is no longer of the essence and undertake substantial efforts after the performance date specified in the contract has passed." *Fla., Dep't of Ins. v. United States*, 81 F.3d 1093, 1096 (Fed. Cir. 1996).

We have stated on numerous occasions that *DeVito's* waiver rule "normally" does not apply to construction contracts "absent unusual circumstances." *Watts Constructors*, ASBCA Nos. 61518, 61961, 19-1 BCA ¶ 37,382 at 18,727; *see also HK&S Constr. Holding Corp.*, ASBCA No. 60164, 19-1 BCA ¶ 37,268 at 181,352, *aff'd*, 825 F. App'x 921 (Fed. Cir. 2020); *ASFA Int'l Constr. Industry & Trade, Inc.*, ASBCA No. 57880, 14-1 BCA ¶ 35,736 at 174,911-12; *AmerescoSolutions, Inc.*, ASBCA No. 56811, 10-2 BCA ¶ 34,606 at 170,549-50; *Arens Corp.*, ASBCA

11

No. 50289, 02-1 BCA ¶ 31,671 at 156,508. Construction contracts usually permit payment of work performed after the completion date and include liquidated damages provisions – a weapon the government can invoke and wield to signal non-forbearance and negate any reliance by the contractor. *MIC/CCS, JV*, ASBCA No. 58242, 14-1 BCA ¶ 35,612 at 174,435 (explaining that waiver is usually not found "because construction contracts generally contain provisions entitling the contractor to payment for work performed after the completion date and entitling the government to liquidated damages for late completion"): *see also Brent L. Sellick*, ASBCA No. 21869, 78-2 BCA ¶ 13,510 at 66,194-95 (noting that, with liquidated damages and payment provisions in construction contracts, "detrimental reliance on the contractor's part cannot be found merely from a period of Government forbearance coupled with continued contractor performance in reliance thereon").

Indeed, the government's imposition of liquidated damages or express reservation of its rights after a completion date has passed indicate the government's intent to hold a contractor liable for delay and default in construction contracts – that time is still of the essence. *Olson Plumbing & Heating Co. v. United States*, 602 F.2d 950, 955 (Ct. Cl. 1979) ("The Government's express reservation of its rights and the assessment of liquidated damages surely made clear to plaintiff that the Government was not excusing the breach."); *see also Empire Energy*, 362 F.3d at 1354 ("[T]he imposition of liquidated damages 'is evidence of the intent to hold the defaulting party liable for its delayed performance.'" (quoting *Olson*, 602 F.2d at 955)); *Fla., Dep't of Ins.*, 81 F.3d at 1096 (finding no waiver because the agency advised the contractor that "liquidated damages continued to accrue and would be deducted from any monthly payment requests" after the completion date passed).

On the other hand, in the "unusual" circumstances where the government fails to expressly reserve its rights to preserve the default deadline or invoke the liquidated damages provision, we have regularly found waiver of the completion date in construction contracts; the government has signaled that time is no longer of the essence. *Technocratica*, ASBCA No. 47992 *et al.*, 06-2 BCA ¶ 33,316 at 165,188 (finding waiver because the agency's post-completion-date communication "did not state . . . that [the agency] continued to deem the contractually specified completion date to be in effect or that liquidated damages were accruing" and failed to mention any accumulation of liquidated damages for seven months); *see also Envt'l Safety Consultants*, ASBCA No. 51722, 11-2 BCA ¶ 34,848 at 171,432 (finding waiver despite agency's reservations of rights because the agency's actions did not demonstrate time was still of the essence); *BV Constr., Inc.*, ASBCA No. 47766 *et al.*, 04-1 BCA ¶ 32,604 at 161,351 (finding waiver where the agency "made no mention or assessment of liquidated damages after the original contract completion date passed" because the contract lacked a liquidated damages provision and "permitted the original contract completion date to pass without apparent concern"); *Overhead Elec. Co.*, ASBCA No. 26656, 85-2 BCA ¶ 18,026 at 90,473 ("The Government neither

12

mentioned nor assessed liquidated damages and thus treated the completion date as no longer being of the essence."), *aff'd*, 795 F.2d 1019 (Fed. Cir. 1986) (unpub. tbl. dec.); *Corway, Inc.*, ASBCA No. 20683, 77-1 BCA ¶ 12,357 at 59,804 ("In the administration of most construction contracts delinquent contractors are permitted to proceed subject to the assessment of liquidated damages. Therefore, there is no waiver of the completion date. In this appeal liquidated damages were never mentioned or assessed and the principles of the 'DeVito' doctrine are applicable.").

We hold that the Navy waived the contract's completion date of September 29, 2019. Until the show cause notice in February 2020, the Navy's September 9, 2019 Modification No. P00001 was the last communication that even hinted time was still of the essence for the contract. The modification simultaneously issued a partial notice to proceed for work that would take months to complete and unrealistically stated that "[t]he Contract Completion Date remains unchanged" from September 29, 2019 (R4, tab 15 at 445). Without a reservation of rights or assessment of liquidated damages, the modification's mere statement that the contract completion date remained the same did not preserve the government's rights, given that neither party expected contract completion within three weeks. *See, e.g.*, *Envt'l Safety Consultants*, 11-2 BCA ¶ 34,848 at 171,432 (finding waiver of the completion date where the parties executed a modification a week before the contract completion date but "neither party was contemplating that the contract work would actually be completed within the next week").

At no time between September 29, 2019 and the issuance of the Navy's show cause notice on February 11, 2020 did the Navy assess (or even mention) liquidated damages or ever state that the completion date was still in effect in any delivered communications. *Technocratica*, 06-2 BCA ¶ 33,316 at 165,188 ("NAVFAC's repeated failure to mention liquidated damages therefore also indicates it was not forbearing from contract termination, but waiving the contractually specified completion date."). Indeed, Consorzio and the Navy continued to negotiate a modification regarding the steel doors, including an expected extension of time to complete the project (app. supp. R4, tabs 5, 7). And, the Navy continued to approve Consorzio's submittals, which led to Consorzio ordering materials and engaging a subcontractor (app. supp. R4, tab 16; DeChavez decl. ¶ 36; D'Amico decl. ¶ 26; app. ex. G). Throughout this correspondence, the contract specialists (who were copied and sometimes responded) never raised a timeliness concern (*see* app. supp. R4, tabs 8-9, 12-15). Thus, the Navy's affirmative acts showed forbearance, which resulted in Consorzio's reliance to continue working on the Task Order. *DayDanyon Corp.*, 15-1 BCA ¶ 36,073 at 176,153 ("[A]ffirmative acts directing or encouraging the contractor to continue performance operate as an election by the Government waiving the delivery date.") (internal quotation and citation omitted).

13

Instead of assessing liquidated damages, issuing a stop work order, or terminating the contract for default on or after September 29, 2019, the Navy allowed Consorzio to muddle through for almost six months before finally ordering Consorzio to stop working on the project on March 11, 2020 (R4, tab 28). *See also Technocratica*, 06-2 BCA ¶ 33,316 at 165,188 (finding waiver where the agency allowed the contractor to "muddle through" for several months after the contract completion date, but failed to reserve its rights regarding the completion date or assess liquidated damages). The Navy's continued authorization of Consorzio's work on the project past the contract's completion date demonstrates that the completion date was no longer of the essence (app. supp. R4, tabs 5, 7-9, 12-15). Moreover, the Navy did not issue the termination for default until September 15, 2020 – nearly a year after the contract completion date (R4, tab 32).

The Navy points to the CPAR evaluation (issued just after the contract completion date passed) to justify its termination decision because the CPAR notes some of Consorzio's delays (gov't br. at 6). While the CPAR indicated that the Navy found Consorzio's performance unsatisfactory due to the delays and that the contract completion date had passed, the CPAR neither mentioned potential default nor discussed assessment of liquidated damages (R4, tabs 16, 20). Notably, CPAR evaluations provide "relevant information, for future source selection purposes," and are not typically the preferred means of informing a contractor of impending default. FAR 42.1501(a); *Todd Constr., LP v. United States*, 656 F.3d 1306, 1309 (Fed. Cir. 2011) (stating that past performance evaluations are "used by contracting officers in determining future contract awards"). Instead, the FAR suggests an agency issue a show cause notice to inform the contractor of impending default. FAR 49.402-3(e)(1). The Navy did not do that in a timely manner, given its continued negotiation of a modification to extend the work and other communications after the completion date, coupled with its failure to reserve its rights or assess liquidated damages.

The Navy also relies on its January 2020 cure notice, which mentioned potentially assessing liquidated damages and potential default, and Consorzio's failure to respond to that notice as a basis for the eventual termination (gov't br. at 11-12; R4, tab 22 (cure notice); tab 27). As noted above, however, Consorzio never received the cure notice (D'Amico supp. decl. ¶ 3). Consorzio could not respond to something it never received.

Ultimately, because the Navy did not reserve its rights, assess liquidated damages, or otherwise act as if the contract completion date was still of the essence, we hold that the Navy waived the contract completion date of September 29, 2019. *Overhead Elec. Co.*, 85-2 BCA ¶ 18,026 at 90,473; *Corway*, 77-1 BCA ¶ 12,357 at 59,804.

14

B.    *The Navy Failed to Set a New Performance Completion Date*

Notwithstanding the Navy's waiver of the contract completion date, the Navy seeks to justify its default based on Consorzio's failure to make progress in performing the Task Order (gov't br. 9-11).  Consorzio argues that the Navy's failure to set a new contract completion date undermines its justification for default (app. br. at 12; app. reply at 5).  We agree.

After the government waives a contract completion date, it cannot terminate a contract for default based on a contractor's failure to make progress unless (1) the government and contractor mutually agree to a new completion date or, (2) the government unilaterally notifies the contractor of a new completion date, which must be reasonable based on the contractor's performance capabilities at the time the government establishes the new date.  *Technocratica*, 06-2 BCA ¶ 33,316 at 165,188 ("[A]fter waiving a contract completion date, the government cannot terminate a contract for default based upon a contractor's failure to make progress . . . unless it reaches agreement on a new completion date with the contractor or establishes by specific notice a new completion date, which is reasonable based on the contractor's performance capabilities at the time that date is established."); *see also Fla. Dep't of Ins.*, 81 F.3d at 1096-97 ("When the non-breaching party waives a deadline, it must set a new deadline for performance so that the parties will understand when performance is required.") (internal citation omitted).

Here, the Navy never set a new contract completion date.  While the parties discussed modifying the contract after the contract completion date, the Navy never came to an agreement with Consorzio on a new contract completion date.  Nor did the Navy unilaterally impose a new, reasonable contract completion date based on Consorzio's capabilities (such as the need to use steel doors instead of the unavailable aluminum doors originally required by the Task Order).  *B.V. Constr*, 04-1 BCA ¶ 32,604 at 161,351 (concluding that the agency "did not select a completion date that was reasonable based upon [the contractor's] performance capabilities" at the time the new completion date was established).  Thus, because the Navy waived the original contract completion date, the Navy could not terminate Consorzio's Task Order for default for failure to make progress without a new completion date to measure the contractor's failure to make progress.

<u>CONCLUSION</u>

For the foregoing reasons, the appeal is sustained. The Navy's default termination shall be converted to a termination for convenience.

Dated: May 1, 2023

DANIEL S. HERZFELD
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62753, Appeal of Consorzio Stabile GMG S.c.ar.l., rendered in conformance with the Board's Charter.

Dated: May 2, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

16